**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**AMJAD DAOUD (02),**

**Defendant.**

**Case No. 16-20101-02-DDC**

**MEMORANDUM AND ORDER**

One last defendant remains in this 2016 criminal case. Way, way back in 2017, defendant, Amjad Daoud, notified the court he intended to plead guilty, but failed to appear for his change of plea hearing. More than eight years later, defendant remains a fugitive. Via new counsel, Mr. Dauod now seeks to litigate pretrial matters. Should the court permit Mr. Daoud to litigate via his counsel even though he remains a fugitive? The government says no. The court agrees, and this Order explains why. The court's rationale begins with some case history.

***Case History***

A grand jury indicted Mr. Daoud in late November 2016, accusing him of conspiracy, mail fraud, and wire fraud. Doc. 1. A magistrate judge in Florida released Mr. Daoud on a bond agreement. And the Florida court's Order of Release provided that defendant "must appear for all court appearances as required." Doc. 4-4 at 1. Mr. Daoud then appeared in our district, and Magistrate Judge Teresa J. James continued Mr. Daoud's release order. Doc. 24 at 1.

Nearly a year later, in December 2017, the court set Mr. Daoud's case for a January 22, 2018 trial. Doc. 70. But no trial occurred because Mr. Daoud notified the court he intended to plead guilty. Consistent with this notice, the court converted January 22 from Mr. Daoud's trial date to his change of plea hearing. January 22 arrived, but Mr. Daoud did not. When the court

called the case for the plea hearing, Mr. Daoud's counsel advised that he had tried to contact Mr. Daoud by various means of communications for a few weeks, "but [he had] received no return from the defendant." Doc. 76. The court found that Mr. Daoud had failed to appear as directed and issued a bench warrant for his arrest. *Id.* The Clerk issued the warrant, and four months later forfeited Mr. Daoud's $100,000 bond. Doc. 89.

Since then? Mostly nothing. The United States Marshals Service hasn't located Mr. Daoud, and he hasn't reappeared on his own. Put simply, defendant Amjad Daoud became a fugitive in January 2018, and he remains one today. Nothing else happened until May 2024, when a new lawyer entered his appearance for Mr. Daoud. But then, more nothing. Then, in July 2026, Mr. Daoud's new counsel filed the current Motion (Doc. 130).

***The Current Motion***

Reduced to essentials, defendant's motion asks to proceed, in Mr. Daoud's absence, with three pretrial motions. Doc. 130 at 1. The first of the motions would seek a Bill of Particulars requiring the government to provide certain details on the charges. Doc. 130-1 at 1. A second proposed motion would ask the court to dismiss the Indictment because it purportedly "was returned outside the applicable statute of limitations." Doc. 130-2 at 1. The third putative motion, if leave were granted, would require the government "to provide an updated ledger of total loss owed . . . so [that Mr. Daoud] may ascertain [his] present financial exposure." Doc. 130-3 at 1 (footnote omitted).

The government's opposition urges the court to deny Mr. Daoud's request to file these motions, all "without prejudice until [he] has subjected himself to the Court's jurisdiction to face

charges in this case." Doc. 132 at 1. As support, the government invokes the fugitive-disentitlement doctrine. *Id.* at 2.[1]

***Analysis***

Under the fugitive-disentitlement doctrine, a court may refuse to consider a criminal defendant's motions while he is a "fugitive from justice." *See Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1992). The doctrine is based, in part, "on a 'disentitlement theory' that construes a defendant's flight during the pendency of his appeal as tantamount to waiver or abandonment." *Id.* at 240. Put simply, a defendant can't take advantage of a court's authority automatically while he is a fugitive from that court's criminal jurisdiction. *See id.*

Mr. Daoud's motion begins by acknowledging his fugitive status. Doc. 130 at 5. It also concedes that this "is not a case involving a brief or technical absence[.]" *Id.* Instead, anticipating the government will invoke the fugitive-disentitlement doctrine, Mr. Daoud contends that the doctrine's bar "***is not automatic.***" Doc. 130 at 6 (emphasis in original). And, he notes, the Supreme Court "has cautioned against using fugitive status as a categorical bar to merits review." *Id.*

On these points, defendant's correct. The Tenth Circuit has recognized explicitly that "application of the fugitive disentitlement doctrine is discretionary." *United States v. Hanzlicek*, 187 F.3d 1219, 1220 (10th Cir. 1999) (citing *Ortega-Rodriguez*, 507 U.S. at 250 n. 23). But

[1] There's a second case pending against Mr. Daoud in our district: No. 19-20030, *United States v. Amjad Daoud*. There, the grand jury charged Mr. Daoud with violating 18 U.S.C. § 3146(a)(1) and (b)(1)(A)(i), a felony commonly referred to as "failure to appear." This lone charge relies on Mr. Daoud's alleged failure to appear in the current case, No. 16-20101-02. Mr. Daoud is in fugitive status in this second case as well. And while his new counsel here also has entered appearances in this other case, counsel hasn't filed any motions in that action.

when the analysis progresses beyond this elementary point, the court's view and Mr. Daoud's view diverge.

Start with the court's view of the pertinent factors informing its discretion. Our Circuit has explained that "policy considerations . . . strongly favor" applying the doctrine when "the criminal defendant has become and remains a fugitive during the pendency of the direct appeal of [defendant's] conviction." *Id.* at 1220 (citing *Ortega-Rodriguez*, 507 U.S. at 242). Those "policy considerations" favoring fugitive disentitlement include "enforceability concerns," "an important deterrent function," and the "interest in efficient, dignified appellate practice." *Id.* (quoting *Ortega-Rodriguez*, 507 U.S. at 242).

Those policy considerations lead the court to deny defendants' motion. Permitting Mr. Daoud to litigate motions in absentia would establish a dangerous precedent. If the court granted him the leave he seeks, it could inspire a future criminal defendant to do what Mr. Daoud did here—stretch his case out as long as possible, inform the court (falsely) that he wishes to plead guilty, and then flee at the last possible moment. Then, years later, the absent defendant could decide he misses living openly in the United States. So, he could renew his defense from some unknown locale. If his motions go well, he could take the win. If they don't, he could remain in hiding and not have to answer his charges. As U.S. Magistrate Judge Faruqui aptly put it, defendant "is trying to have his cake and eat it, too." *United States v. Ospirov*, 2024 WL 4367523, at *1 (D.D.C. Oct 1, 2024). Such an approach would serve neither deterrence nor dignified court practice. *See Hanzlicek*, 137 F.3d at 1220.

The court is mindful that *Hanzlicek* applied the doctrine to a criminal case at the appellate level. It likewise understands that Mr. Daoud's criminal case is stuck, currently, before a trial court. But it's stuck here because defendant made himself a fugitive and has remained one for

eight years. And the court's hard-pressed to imagine why "the policy considerations" informing the doctrine weigh differently at the trial level than at the appellate level.

This conclusion aligns with our Circuit's practice, too. As the *Hanzlicek* court explained, the "strength of these policy considerations counsel against reaching the merits of a fugitive's direct appeal in the absence of extraordinary circumstances." *Id.* The court doesn't find extraordinary circumstances here.[2]

Instead of arguing extraordinary circumstances apply, defendant directs the court's attention to three cases where other federal courts of appeals declined to apply the fugitive-disentitlement doctrine. Doc. 130 at 7. According to defendant, these cases suggest the court needn't apply the doctrine when a defendant's "filing raises threshold legal or constitutional issues capable of resolution without defendant's presence." *Id.* As the court reads them, these cases do no more than fortify the undisputed notion that the disentitlement doctrine is discretionary.

But even if the court were to follow the reasoning of the cases defendant cites, they wouldn't change the outcome here. The courts in those cases chose not to apply fugitive disentitlement because it wasn't clear the defendants were actually "fugitives." *See United States v. Bokhari*, 757 F.3d 664, 672 (7th Cir. 2014) (finding it unclear whether defendant was a

---

2 Our Circuit has acknowledged "two very narrow" cases that presented the extraordinary circumstances necessary to avoid the fugitive-disentitlement doctrine. *Hanzlicek*, 187 F.3d at 1220 n.1 The first is *United States v. Sharpe*, in which the Supreme Court refused to apply the fugitive-disentitlement doctrine to a government appeal because the doctrine was "wholly irrelevant when the defendant has had his conviction nullified and the government seeks" Supreme Court review. 470 U.S. 674, 681 n.2 (1985). The second is the Fourth Circuit's opinion in *United States v. Snow*, where a defendant escaped while his appeal was pending, but recaptured and returned to custody before the Fourth Circuit's decision issued. 748 F.2d 928, 929 (4th Cir. 1984). Because the defendant "was back in custody within thirty days of his escape," the Fourth Circuit, exercising its discretion, permitted his appeal to proceed. *Id.* at 930. Neither of these exceptional cases applies here. Indeed, Mr. Daoud doesn't raise them.

fugitive when he returned to Pakistan years before he was indicted and Pakistan refused to extradite him); *United States v. Kashamu*, 656 F.3d 679 (7th Cir. 2011) (addressing the preclusive effect of a foreign judge's decision not to extradite a criminal defendant without mentioning the fugitive-disentitlement doctrine); *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1055 (9th Cir. 1991) (refusing to apply disentitlement where the defendant left the country without the government's knowledge before his lawyer and the government negotiated a deal allowing him to leave the country). As the *Bokhari* court explained it, "[i]dentifying fugitives for purposes of disentitlement doctrine can present complicated legal and factual questions. . . . Instead of deciding the contested issue, we will . . . reach[] the merits because 'the appeal is so plainly frivolous[.]'" 757 F.3d at 672 (quoting *United States v. Baccollo*, 725 F.2d 170, 172 (2d Cir. 1983)).

Not so here. Whatever the vagaries of the meaning for the term "fugitive" is in other contexts, it's not complicated in this case. Mr. Daoud is, plain and simple, a fugitive. His chosen counsel represented to the court that he planned to plead guilty. It's reasonable to infer that Mr. Daoud directed his counsel to do so. And then, on the day he was to plead guilty, he didn't appear. His counsel reported that defendant had stopped communicating, and his whereabouts were unknown. In the eight-plus years since, he hasn't surrendered, and the United States Marshals Service can't locate him. There aren't any subtle legal issues about Mr. Daoud's fugitive status.

Understanding it's a discretionary call, the court chooses to apply the fugitive-disentitlement doctrine to Mr. Daoud. Under the current circumstances, the court will not entertain any of the three motions that Mr. Daoud's current motion seeks leave to assert. It denies his Motion (Doc. 130).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Combined Motion for Leave to Proceed in Defendant's Absence and for Leave to File Attached Substantive Motions out of Time (Doc. 130) is denied without prejudice to refiling.

**IT IS SO ORDERED.**

**Dated this 12th day of November, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**